# EMPLOYMENT AGREEMENT

In consideration of employment of Roland Nadeau ("Employee" or "Nadeau") by Dane Street LLC ("the Company), this Agreement is made between Employee and the Company, a Massachusetts corporation with a principal office at One Dane Street, Jamaica Plain, Massachusetts. This agreement is effective July 7, 2014 .

1. **Best Efforts.** The Employee agrees that, during the term of employment with the Company, employee will serve the Company faithfully and to the best of employee's ability and will devote full business and professional time, energy and diligence to the business and affairs of the Company, and to the performance of individual duties as reasonably directed by the President of the Company or anyone designated by the President of the Company.

2. **Title and Compensation.**

    a. *Title* – Employee's title will be Operations Manager, IME and Employee will report directly to the Joe Gasparoni.

    b. *Salary* - Employee will receive payment of $2,500 bi-weekly, which will amount to $65,000 on annual basis.

    c. *Company Benefits* – Employee is eligible for the company benefits as per employee guidelines.

    d. *Bonus* – In consideration of signing employment agreement, Employee is eligible for a bonus plan. Details to be determined completed upon successful orientation period.

3. **Confidential Information.** The Employee acknowledges that, in order for employee to perform duties properly, the Company must necessarily entrust the Employee with certain trade secrets and confidential business information (the "Confidential Information"). The Confidential Information includes, but is not limited to the Company's research and development plans and activities; the Company's manufacturing and production plans and activities; the prices, terms and conditions of the Company's contracts with its customers; the identities, needs and requirements of the Company's customers, the Company's pricing policies and price lists; the Company's business plans and strategies; the Company's marketing plans and strategies; personnel information; and financial information regarding the Company. The Employee further acknowledges that the development or acquisition of such Confidential Information is the result of great effort and expense by the Company, that the Confidential Information is critical to the survival and success of the Company, and that the unauthorized

1

EXHIBIT A

disclosure or use of the Confidential Information would cause the Company irreparable harm.

4. **Nondisclosure of Confidential Information.** The Employee agrees that, during the term of employment with the Company and thereafter, employee will not disclose the Confidential Information or use it in any way, except on behalf of the Company, whether or not such Confidential Information is produced by the Employee's own efforts. The Employee further agrees, upon termination of employment, promptly to deliver to the Company all Confidential Information, whether or not such Confidential Information was produced by the Employee's own efforts, and to refrain from making, retaining or distributing copies thereof.

5. **Inventions and Discoveries.** Any invention, discovery, development, improvement, procedure, writing, work or trade secret (collectively referred to herein as "invention or discovery") that relates to any phase of the business of the Company, or results from any work performed on the premises of the Company or by use of the facilities, equipment or services of other employees of the Company, whether patentable, copyrightable or not, and that is made or discovered by the Employee individually or jointly with any other person or persons during the term of the Employee's employment with the Company, shall forthwith be disclosed to the Company and shall be the sole property of the Company. Any such invention or discovery shall be considered a work made for hire. The Employee hereby assigns to the Company all of rights, title and interest to any such invention or discovery. The Employee further agrees to maintain adequate, current written records of any invention or discovery within the scope of the foregoing provisions in the form of notes, sketches, drawings, memoranda or other written evidence, which records shall be and remain the sole property of the Company.

6. **Patents, Trademarks and Copyrights.** The Employee agrees that, during the term of employment with the Company and thereafter, employee will, whenever requested to do so by the Company and at the expense of the Company, apply or join with the Company in applying for patents, trademarks, copyrights, letters patent and other means for the protection of proprietary information, both foreign and domestic, with respect to any invention or discovery described in paragraph 4. The Employee shall execute and deliver to the Company any and all other documents and instruments that, in the opinion of the Company and its counsel, are appropriate in order to obtain said patents, trademarks, copyrights, letters patent and other means of protecting proprietary information. The Employee shall further execute and deliver all such other instruments and take all other actions that in the opinion of the Company and its counsel shall be appropriate to vest in the Company (or in such persons as the Company may specify) all right, title and interest in said patents, trademarks, copyrights, letters patent and other means of protecting proprietary information, and shall cooperate and assist in any litigation commenced by the Company against third parties with respect to the same. The Employee hereby irrevocably appoints the Company to be employee's attorney in fact and in name and on behalf, to execute all such

instruments and take all other actions and generally to use employee's name for the purpose of giving to the Company the full benefit of the provisions of this paragraph.

7. **Nonsolicitation of Company Employees.** The Employee agrees that, during the term of employment with the Company and for one year thereafter, employee will not solicit or take away, or attempt to solicit or take away, any employees of the Company, either for employee's own business or for any other person or entity, nor shall employee induce or encourage any employee to sever employment with the Company. Employee also agrees during this period not to hire or assist in the hiring, directly or indirectly, any other employee of the Company.

8. **Nonsolicitation of Company Customers.** The Employee agrees that, during the term of employment with the Company and for one year thereafter, employee will not solicit or take away, or attempt to solicit or take away, or assist in doing so, directly or indirectly, any customers or clients of the Company, either for own business or for any other person or entity, nor shall induce or encourage any customer or client to sever its relationship with the Company.

9. **Noninterference with Company.** The Employee agrees that, during the term of employment with the Company and for one year thereafter, employee will not encourage or seek to persuade any customers, clients, vendors, or independent contractors of the Company to diminish or discontinue their business with the Company or to violate any agreement with the Company. The Employee also understands and acknowledges that there exists information about the Company, its business, its products, its customers, and its suppliers that if made known to other customers, suppliers, or the public at large would cause considerable, irreparable harm to the Company. Employee therefore agrees that employee will never share this information with any other person or entity without prior written permission from the President of the Company. The only exception to this prohibition is in replying to a lawfully issued subpoena and only then after first notifying the President of the Company at least seven days before complying with the subpoena.

10. **Noncompetition.** The Employee agrees that, during the term of employment with the Company and for a period of one year thereafter, employee will not, directly or indirectly, render services to, work for or on behalf of, have an interest in, make any loan to, or assist in any manner, any business that is substantially similar to or competitive with that in which the Company was engaged or planned to engage on the date of the Employee's termination from the Company, in the markets where the Company does business or planned to do business as of that date. The foregoing shall not prevent the Employee from owning up to one percent (1%) of the outstanding securities of a publicly held corporation that may compete with the Company.

11. **Obligations to Previous Employers.** Employee hereby warrants and certificates that Employee's being employed by the Company does not and will not breach any of Employee's obligations under any agreement to which Employee is a party with any of the Employee's previous employers; that Employee has not taken or retained, and will not take or retain, any documents or other records, or any computer, belonging to any previous employer including, without limitation, documents or other records in electronic form, without authorization from any such employer to the extent such obligations continue in effect, and that Employee will use or disclose any confidential information belonging to any previous employer in connection with Employee's employment by the company.

12. **Remedies.** The Employee agrees and acknowledges that Employee's violation of any of the terms of the agreement would irreparably harm the Company. Accordingly, Employee acknowledges and agrees that if Employee violates or threatens to violate any covenant or agreement made by the Employee, the Company – in addition to all other rights it may have – shall be entitled to an injunction restraining Employee from breaching this Agreement, and to recover from Employee its reasonable attorney' fees and costs incurred in obtaining such remedies. Employee further agrees that the time periods for obligations set forth in this agreement shall be tolled during any period in which Employee is in violation of the agreement.

13. **Return of Company Property.** The Employee agrees, upon termination of employment, promptly to deliver to the Company all information, including files, books, reports, documents, computer disks, CD's or tapes, and other property prepared by or on behalf of the Company or purchased with Company funds, and to refrain from making, retaining or distributing copies thereof.

14. **Specific Performance.** The Employee acknowledges that a breach of this Agreement by the Employee will cause irreparable injury to the Company, that the Company's remedies at law will be inadequate in case of any such breach, and that the Company will be entitled to preliminary injunctive relief and other injunctive relief in case of any such breach.

15. **Compliance with Other Agreements.** The Employee represents and warrants to the Company that the execution of this Agreement by employee's performance of obligations hereunder, and employment by the Company will not, with or without the giving of notice or the passage of time, conflict with, result in the breach or termination of, or constitute default under any agreement to which the Employee is a party or by which is Employee is or may be bound.

16. **Termination of Employee.**

    a. <u>Termination for "Good Cause"</u>. Except as otherwise provided in this Agreement, the Company may terminate the employment of the Employee

hereunder only for "Good Cause", which shall mean: (1) any misconduct by the employee, which is materially or demonstrably injurious to the Company, financially or otherwise, in each case, to be determined by the President of the Company, except for business decisions of the Employee that were made in good faith and in the best interest of the Company; (2) conviction of a felony or conviction of any crime in connection with the Employee's employment by the Company which causes the Company a substantial detriment; (3) dependence upon alcohol or drugs, or any other controlled or illegal substance; (4) a material and demonstrable failure to meet mutually agreed upon business objectives (including production or performance goals); and (5) a breach by the Employee of a material provision of this Agreement.

If the Employee is terminated for "Good Cause", the Company shall pay to the Employee their salary, if any, earned prior to the effective date of the termination of the Employee. Under such circumstances, said payment to the Employee shall be in full and complete discharge of any and all liabilities or obligations of the Company to the Employee hereunder.

17. **Waivers.** The waiver by the Company or the Employee of any action, right or condition in this Agreement, or of any breach of a provision of this Agreement, shall not constitute a waiver of any other occurrences of the same event.

18. **Survival; Binding Effect.** This Agreement shall survive the termination of the Employee's employment with the Company regardless of the manner of such termination, and shall be binding upon the Employee and heirs, executors and administrators.

19. **Assignability by Company.** This Agreement is assignable by the Company and inures to the benefit of the Company, its subsidiaries, affiliated corporations, successors and assignees. This Agreement, being personal, is not assignable by the Employee.

20. **Headings.** The section headings in this Agreement are for reference purposes only and shall not be deemed to be a part of this Agreement or to affect the meaning or interpretation of this Agreement.

21. **Severability.** The covenants of this Agreement are intended to be separable, and the expressions used therein are intended to refer to divisible entities. Accordingly, the invalidity of all or any part of any paragraph of this Agreement shall not render invalid the remainder of this Agreement or of such paragraph. If, in any judicial proceedings, any provision of this Agreement is found to be so broad as to be unenforceable, it is hereby agreed that such provision shall be interpreted to be only so broad as to be enforceable.

22. **Governing Law.** This Agreement shall be deemed to have been made in Massachusetts and shall be governed by and construed in accordance with the substantive laws of Massachusetts, excluding, however, such laws as pertain to conflicts of laws. Moreover, Employee agrees that while employee may from time to time perform work in states or countries outside of Massachusetts, employment is at all times being directed from the Company's Massachusetts headquarters, and that Massachusetts enjoys the most significant contacts (as opposed to other states or countries) with the work being performed under this Agreement.

23. **Submission to Jurisdiction in Massachusetts.** The Employee voluntarily agrees to submit self to the jurisdiction of both the state and Federal courts of Massachusetts, and agrees that if employee is sued by the Company in the state or Federal courts of Massachusetts, employee will not seek to have the matter dismissed or transferred based upon any jurisdictional issues.

24. **Entire Agreement; Amendments.** This Agreement constitutes the entire understanding of the parties with respect to its subject matter, supersedes any prior communication or understanding with respect thereto, and no modification or waiver of any provision hereof shall be valid unless made in writing and signed by the parties.

25. **Understanding of Agreement.** The Employee states that there has been a reasonable period sufficient to study, understand and consider this Agreement, that employee has had an opportunity to consult with counsel of choice, that they have read this Agreement and understands all of its terms, that they are entering into and signing this Agreement knowingly and voluntarily, and that in doing so not relying upon any statements or representations by the Company or its agents.

IN WITNESS WHEREOF, the parties have duly executed this Agreement on the _8_ day of _July_, _2014_.

Dane Street LLC,

_____    _____
Management                          Employee

Dated: _7/8/14_                     Dated: _7/8/14_

6